**POLK COUNTY Iowa, Appellant,**

and

**George Wennerberg, Linda Davis, Steven Elliot, Fred D. Carl, Virginia Rogers, and Marilyn Straw, Intervenor-Appellants,**

v.

**IOWA STATE APPEAL BOARD,**
Appellee,

and

**Polk-Des Moines Taxpayers Association, and Vincent A. Ella, Richard S. Davis, Sara A. Matthews, David L. Maaha, James W. Hubbell, III, Ronald P. Morden, George F. Milligan, Helen H. Goodner, Donald R. Cook, Deloris J. Davis, Harlan Bergman, Doug Cunningham and Gerald W. Reed, on behalf of all other Petitioners, Protestor-Appellees.**

No. 67094.

Supreme Court of Iowa.

Feb. 16, 1983.

Norman G. Jesse, Asst. Polk County Atty., and Curt L. Sytsma and Arthur C. Hedberg, Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., Brent R. Appel and Earl Willits, Asst. Attys. Gen., for appellee, Iowa State Appeal Bd.

Robert R. Rydell and Eric W. Burmeister of Tesdell, Rydell, Hall & Shinkle, Des Moines, for protestor-appellees.

Considered by LeGRAND, P.J., and McCORMICK, McGIVERIN, LARSON and SCHULTZ, JJ.

McGIVERIN, Justice.

The resolution of this appeal depends on the harmonization of the Iowa Administrative Procedure Act (IAPA), Iowa Code ch. 17A (1981), and the Local Budget Law, Iowa Code ch. 24 (1981). This appeal is the latest skirmish over the Polk County budget for the 1981–82 fiscal year.

On March 16, 1981, the Polk County board of supervisors certified to the county auditor a $61,000,000 budget for fiscal 1981–82. The budget was comprised of 43 funds affecting over 1000 employees and 305,000 residents. Pursuant to section 24.-27, an appropriate number of persons affected by the budget filed a written protest with the county auditor objecting to over-budgeting of cost of living allowances (COLA), social security (FICA) and Iowa Public Employees' Retirement System (IP-ERS) items, transfer of costs of bailiffs from the general fund to the court expense fund, and underestimation of various income items. The auditor transmitted copies of the protest and budget to the State Appeal Board (Board) as required by section 24.27. Sections 24.26–.32 are involved in this case.

A hearing was held by the Board and on June 8, 1981, the Board certified to the Polk County auditor its decision reducing the budget in several particular respects by approximately $880,000.

Petitioner Polk County and various intervenors on its behalf sought judicial review of the Board's decision under chapter 17A. These petitioners also filed an extensive application for adjudication of law points. Respondents State Appeal Board and various intervenors, including the Polk-Des Moines Taxpayers Association, filed motions to dismiss.

The district court held a hearing on these matters. On July 31, 1981, the district court, in the rulings now before us on appeal, sustained the motion to dismiss, finding that judicial review was not available under chapter 17A, and that Polk County and all except one intervenor lacked standing to contest the Board's actions. In the event it was later determined that chapter 17A judicial review was available to petitioners, the court also ruled, in the alternative, on petitioners' application to adjudicate law points. The effect of these rulings was to uphold the $880,000 reduction to the budget.

Petitioners appealed dismissal of their petition and raised the following issues:

(1) Whether Polk County and the other intervenor-petitioners have standing to seek judicial review of the constitutionality of sections 24.26–.32 and of the Board's actions;

(2) whether the review contemplated by sections 24.26–.32 is an unlawful delegation of authority by the legislature;

(3) whether sections 24.26–.32 unlawfully delegate the power to pass a local or special law;

(4) whether failure to adopt rules as required by section 17A.3 invalidates the action of the Board;

(5) whether the use of "final" in section 24.32 relative to the Board's decision precludes judicial review under chapter 17A;

(6) whether the hearing required by section 24.28 makes this a contested case under section 17A.2(2);

(7) whether the protest petitions were sufficient;

(8) whether the Board had jurisdiction to issue an order directing the manner of use of interest earned on revenue sharing funds; and

(9) whether salaries of bailiffs are properly paid from the court expense fund.

We reverse in part the rulings of the district court but affirm the result it reached in upholding the decision of the Board.

■ I. *Mootness.* Before reaching the issues raised by petitioners, we make the initial observation that the outcome of this appeal can have no practical effect on the 1981–82 Polk County budget. Taxes and expenditures for fiscal 1982 were collected and made pursuant to the Board's directive. The budget for 1983–84 soon will be certified by the Polk County board of supervisors. However, as budget battles show no signs of subsiding, this appeal raises recurring issues of considerable public interest which call for resolution. We therefore consider the merits of several of the issues raised in petitioners' appeal. *See Beam v. Iowa Employment Security Commission,* 264 N.W.2d 742, 745 (Iowa 1978). We do not decide those issues which are unlikely to arise again in the future.

II. *Standing.* Prior to reaching the merits of this case, we must also deal with the challenge to petitioners' standing to obtain judicial review of the Board's actions. Of the petitioners presently before us, the district court ruled that standing could be conferred only on intervenor Steven Elliot,

who intervened in his own behalf and in his capacity as President of AFSCME, Local No. 1868, an "employee organization" as defined in Iowa Code section 20.3(4) (1981), and on behalf of the members thereof who are Polk County employees. Motions to dismiss the petition as to the remaining petitioners, including Polk County, were sustained on the basis of lack of their standing to contest the Appeal Board's actions.

We agree with the district court that Elliot is the only petitioner-intervenor who has standing. We disagree with the court's ruling dismissing Polk County entirely from the case; as to certain issues Polk County has standing.

A. *Polk County.* Whether Polk County has standing depends on the type of issue it seeks to raise. In the present case, the issues raised may fall into one of three categories: (1) constitutional challenge—a challenge of the constitutionality of sections 24.26–.32; (2) challenge of agency's authority—a challenge as to the Board's authority or proper procedure under chapter 24; and (3) challenge of the agency's discretion—a challenge which attacks the results of the Board's decision.[1] All of these categories ordinarily would be reviewed under the judicial review provisions of chapter 17A. See § 17A.19(8). However, a person or party must first show that it has standing as one "who is aggrieved or adversely affected by [the] final agency action" for the purposes of section 17A.19(1), before being entitled to raise these issues.

Polk County falls within the IAPA's definition of a "person." Iowa Code § 17A.2(6) (" 'Person' means any ... governmental subdivision...."). The determinative issue regarding whether it has standing to challenge the constitutionality of the statute is the requirement of section 17A.19(1) that it be aggrieved or adversely affected by the Board's action.

■ Our cases have held uniformly that a county lacks standing to challenge the constitutionality of state statutes. *Board of*

---

1. Our discussion on standing assumes that the judicial review provisions of chapter 17A apply to Board decisions made under chapter 24. *See* division VI *infra.*

Supervisors of Linn County v. Department of Revenue, 263 N.W.2d 227, 232 (Iowa 1978); Warren County v. Judges of Fifth Judicial District, 243 N.W.2d 894, 897 (Iowa 1976); C. Hewitt & Sons v. Keller, 223 Iowa 1372, 275 N.W. 94 (1937). The reasons for this longstanding rule are explained in Board of Supervisors of Linn County. These reasons need not be reiterated here, and are not changed, as Polk County suggests, by the 1978 adoption of the Home Rule Amendment. Iowa Const. art. III, § 39A.

The Home Rule Amendment allows counties to exercise power over local affairs in regard to which there is no overriding legislative directive. Counties remain the creatures of the legislature and, therefore, must accept as final the acts of their superior, the legislature.

We hold that a county has no interest in defeating a statute duly enacted by the legislature. As a result the constitutionality of sections 24.26–.32 and the Board's actions under them and the provisions of chapter 17A do not give rise to situations in which Polk County becomes an aggrieved or adversely affected "person" within the meaning of section 17A.19(1).

Consequently, Polk County lacks standing to raise the following constitutional issues: (1) that review by the State Appeal Board, as contemplated by Iowa Code sections 24.-26–.32, is an unlawful delegation in violation of article III, section 1 of the Iowa Constitution; (2) that as interpreted and applied by the Board, sections 24.27–.32 are unconstitutional because they purport to delegate local or special lawmaking which the legislature is prohibited from doing under article III, section 30, of the Iowa Constitution; and (3) that the Board's failure to adopt rules as required by section 17A.3 denies Polk County due process of law and invalidates action taken by the Board.

■ Under the IAPA, however, counties may challenge the nature and extent of the authority or procedures of a state agency under relevant or enabling legislation. See Southeast Warren Community School District v. Department of Public Instruction, 285 N.W.2d 173, 177 (Iowa 1979) ("The standing rule should not bar a [subordinate] from access to the courts to obtain judicial determination of issues which we have held the superior agency cannot authoritatively determine."). The issues raised in this category of cases are sufficient to bring the county within the requirements of section 17A.19(1). They give the county a "specific, personal, and legal interest" which has been "specially and injuriously affected by the [Board's] decision" within the meaning of the test of aggrievement approved in City of Des Moines v. PERB, 275 N.W.2d 753, 759 (Iowa 1979). Southeast Warren Community School District, 285 N.W.2d at 177–78.

■ Much of the present case deals with a judicial determination of the scope of the Board's authority and jurisdiction under chapter 24, and the harmonization of chapters 17A and 24. These issues do not concern an attack on the Board's discretion and may be raised by Polk County. The issues which Polk County has standing to raise are as follows: (1) The applicability of the judicial review provisions of chapter 17A to authority of the Board; (2) whether the hearing required by sections 24.28–.29 is a contested case under the IAPA; (3) the sufficiency of the protest petitions to confer jurisdiction on the Board; (4) whether the Board has jurisdiction to enter an order directing the use of federal revenue sharing funds; and (5) the correctness of the Board's statutory construction concerning the fund out of which salaries of bailiffs were payable.

■ Finally, under section 17A.19(1), the county would not have had standing to seek review of a matter entrusted by statute to the Board's discretion. The county is subordinate to the Board in the vertical chain of the budgetary process; therefore, it cannot meet the standing requirement that it be an aggrieved or adversely affected "person," because the interests of the superior and the subordinate are considered to be the same. Southeast Warren Community School District, 285 N.W.2d at 177–78;

*Iowa Department of Revenue v. Iowa State Board of Tax Review,* 267 N.W.2d 675, 677–79 (Iowa 1978); *see also* Iowa Code § 24.32 (the Board's decision "shall be final"). Although the county raised no challenges within this category, by way of explanation we state that Polk County would not have had standing to seek reversal of the Board's decision to reduce the budget in certain particulars by $880,000. This rule is intended to foster the doctrine of administrative finality—a doctrine of special importance in the realm and short time frame of budget review.

■ **B.** *Intervenors.* As was true with Polk County, we must determine standing of the intervenors under the requirements of section 17A.19(1). *City of Des Moines,* 275 N.W.2d at 759. The test for aggrievement requires that the intervenors demonstrate (1) a specific, personal and legal interest in the subject matter of the Board's decision and (2) that this interest has been specifically and injuriously affected by the decision. *Id.* And in a case such as this, the intervenors must show that they have been injured in a special manner different from the public generally. *Williamson v. Kelly,* 271 N.W.2d 727, 729 (Iowa 1978).

■ Only Steven Elliot can meet this test. He alleges that his employment rights and the rights of those he represents will be impaired as a result of an $880,000 budget reduction. This is a specific and legally cognizable injury which is not shared by the general public. As for the remaining intervenors, their alleged interests cannot confer standing. The Board did not reduce those portions of the budget in which they expressed an interest. Consequently, they have no personal stake in this appeal.

■ For the reasons discussed in the preceeding paragraph, only Elliot can satisfy the standing requirement of the IAPA. The category dichotomy which applies to Polk County does not apply to intervenor Elliot. Once he meets the standing require-

ments of the IAPA, he can raise a challenge under any of the three categories. Iowa Code § 17A.1(2) ("This chapter is meant to apply to . . . all suits for the judicial review of agency action. . . ."); § 17A.2(9) ("Agency action includes the whole or part of an agency . . . statement of law or policy, or order, decision . . . proceeding . . . or any other exercise of agency discretion or failure to do so. . . ."); § 17A.19(8) (". . . The court shall reverse, modify, or grant any other appropriate relief from the agency action . . . if substantial rights [2] of the petitioner have been prejudiced because the agency action is: (a) In violation of constitutional or statutory provisions; (b) In excess of the statutory authority of the agency; * * * * (e) Affected by other error of law *. * * * .*").

We now proceed to the merits which were decided in the district court as an application to adjudicate law points. First we will consider the constitutional challenges raised by intervenor Elliot.

III. *Unlawful delegation.* Elliot contends that the review by the State Appeal Board which is contemplated by sections 24.26–.32 is an unlawful delegation of authority by the Legislature in violation of article III, section 1, of the Iowa Constitution. Specifically, section 24.30 gives the Board the authority "to review and . . . to approve, disapprove, or reduce all such proposed budgets, expenditures, and tax levies so submitted to it upon appeal. . . ." We agree with the district court's ruling that this is not an unconstitutional delegation.

It is a well-settled principle that statutes are presumed to be constitutional. *State v. Rivera,* 260 Iowa 320, 322, 149 N.W.2d 127, 129 (1967). Additionally, Iowa is among the states which have relaxed the formerly strict requirements of delegation.

> The test—not always easy to apply—is whether such delegation is a reasonable one permitting the administrative body only to "fill in the details" to accomplish a general purpose or policy announced by the legislature itself or whether it abdi-

---

**2.** The "substantial rights" language of section 17A.19(8) is merely a provision analogous to a harmless error rule; it has no bearing on standing. *City of Des Moines,* 275 N.W.2d at 759.

cates to the administrative body the right to legislate.

\* \* \* \* \* \*

[T]he presence or absence of procedural safeguards is important in determining whether this delegation is reasonable. *Elk Run Telephone Co. v. General Telephone Co. of Iowa,* 160 N.W.2d 311, 316–17 (Iowa 1968). Elliot maintains only that the delegation to the State Appeal Board was not accompanied by adequate procedural safeguards.

The determination of whether adequate procedural safeguards exist depends on what function the agency will serve on behalf of the legislature. *Board of Supervisors of Linn County,* 263 N.W.2d at 238–39. The procedural safeguards must advance that purpose, and effectively preclude arbitrary, capricious or illegal conduct on the part of the Board.

It is the duty of the State Appeal Board to review county budgets from which an appeal has been taken. The appeal must be conducted in a manner compatible with the budgetary process—an unwieldy legislative process which traditionally has not lent itself to detailed procedures. Section 24.28 provides for a hearing and notice, sets the time frame of the appeal process and determines the burden of proof. Section 24.31 provides that the hearing shall be simple and informal. Since the budgetary process is constitutionally delegated to the legislature's expertise, U.S. Const., art. I, § 8; Iowa Const., art. III, § 24, the legislature is well aware of the procedures required to assure a fair review of a budget.

We conclude that the legislature, mindful that it cannot foresee all conditions which may arise in the budgetary process, provided sufficient procedural safeguards to protect interested parties against arbitrary and capricious conduct on the part of the Board. The delegation to the Board is not unlawful.

IV. *Special law.* The decision of the Board, Elliot contends, is, in fact, the delegation of power to pass a special law—a power which the legislature is prohibited from exercising. Iowa Const., art. III, § 30. Like the district court, we do not find this argument compelling.

Chapter 24 does not single out individual localities; it operates equally on all local governments. The results of the Board's decisions may vary depending on the facts of each appeal, but the appeal process is conducted in precisely the same manner in all 99 counties. The law merely requires uniformity of operation, not of consequences in application. *Cook v. Dewey,* 233 Iowa 516, 520, 10 N.W.2d 8, 9 (1943).

Elliot's contention is without merit. We agree with the district court.

V. *Failure to adopt rules.* Intervenor Elliot's last constitutional contention is that the Board's failure to adopt rules as required by section 17A.3 invalidates its decision because such failure deprived him of due process of law.

We note that this problem has now been remedied by the Board. It has promulgated rules pursuant to section 17A.3 which became effective April 7, 1982. 60 Iowa Admin.Code ch. 5, pp. 1–5. Further discussion of Elliot's contention would be of no future assistance in budgetary appeals. Therefore we do not address it.

We conclude that intervenor Elliot's constitutional contentions, which we have addressed, are without merit. Chapter 24 is a constitutional delegation of authority and the actions taken under sections 24.26–.32 do not amount to the passage of a special law.

We next consider chapter 24 in light of the IAPA.

VI. *Judicial review under chapter 17A.* The initial issue which we now must decide is whether the finality language in section 24.32 precludes all judicial review of the Board's decisions. The district court ruled that judicial review is precluded. We, however, cannot construe the language of section 17A.23 in any manner except to conclude that the Board's decisions are subject to judicial review. The district court's ruling which sustained respondent's motion

to dismiss on the basis that review under chapter 17A was barred is, therefore, erroneous.

The parties do not dispute that the State Appeal Board is an agency under the IAPA. Iowa Code § 17A.2(1) ("'Agency' means each board, commission, department, officer or other administrative office or unit of the state....") Nonetheless, respondents argue that section 17A.19 (judicial review of agency action) does not apply to decisions of the State Appeal Board.

At issue is the reconciliation of the IAPA and the Local Budget Law. Section 17A.23 of IAPA, which became effective July 1, 1975, provides as follows:

> Except as expressly provided otherwise by this chapter or by another statute referring to this chapter by name, the rights created and the requirements imposed by this chapter shall be in addition to those created or imposed by every other statute now in existence or hereafter enacted. If any other statute now in existence or hereafter enacted diminishes any right conferred upon a person by this chapter or diminishes any requirement imposed upon an agency by this chapter, this chapter shall take precedence unless the other statute expressly provides that it shall take precedence over all or some specified portion of this named chapter.

> The Iowa administrative procedure Act shall be construed broadly to effectuate its purposes. This chapter shall also be construed to apply to all agencies not expressly exempted by this chapter or by another statute specifically referring to this chapter by name; and except as to proceedings in process on July 1, 1975, this chapter shall be construed to apply to all covered agency proceedings and all agency actions not expressly exempted by this chapter or by another statute specifically referring to this chapter by name.

Consequently, if decisions of the Board are not specifically exempted by statute from the IAPA, the judicial review provisions of section 17A.19 apply.

Under the Local Budget Law, section 24.-32 provides that decisions of the board are *final.*

> After a hearing upon such appeal, the state board shall certify its decision with respect thereto to the county auditor, and *such decision shall be final.* The county auditor shall make up his records in accordance with such decision and the levying board shall make its levy in accordance therewith....

(Emphasis added.)

In support of their contention that "final" means "final," respondents rely on a compelling common-sense argument: in order for the local government budgetary process to operate in a timely fashion, speed is of the essence if a review of the budget is requested. Even the most expeditious handling by the judiciary contradicts the time frame established by the legislature in chapter 24.[3]

Additionally, the finality of the Board's decision before the enactment of the IAPA had been viewed as beyond the practical reach of judicial review. *Independent School District of Cedar Rapids v. State Appeal Board,* 230 Iowa 924, 928, 299 N.W. 440, 442 (1941) (Under the plain provisions of the Local Budget Law, the decision of the State Appeal Board, when attacked in certiorari action, is final and cannot be disturbed by the courts.). One commentator even suggests that prior to the adoption of the IAPA, if a statute forbade judicial review by labeling the administrative action "final," "review by direct appeal [was] absolutely barred." Bezanson, *Judicial Review of Administrative Action in Iowa,* 21

---

**3.** Under the legislation in effect when this appeal was taken, section 24.27 provided that not later than the first Tuesday in April a protest petition could be filed with the county auditor. The section further required the auditor to prepare "immediately" a certified copy of the budget and transmit it, with the protest, "forthwith" to the Board. Section 24.28 required a hearing to be held by the Board, and section 24.32 required a final disposition of the appeal before April 24. Within at most a 24-day window, the Appeal Board was to review the protest, hold a hearing, examine the budget and finally render a decision. The decision was rendered directly to the county auditor so that tax lists could be prepared promptly.

Drake L.Rev. 1, 25 (1971); *see also Iowa Department of Revenue v. Iowa Merit Employment Commission,* 243 N.W.2d 610, 614 (Iowa 1976) (construing Iowa Code ch. 19A (1973)). However, certiorari review did lie for review of questions of law. *Independent School District of Cedar Rapids,* 230 Iowa 924, 299 N.W. 440; *see also, Southeast Warren Community School District,* 285 N.W.2d at 176–77.

We, however, must work within the statutory framework which the legislature has devised. Respondents' common-sense arguments and prior statutory interpretations cannot overcome the mandatory language of section 17A.23. Nowhere in chapter 24 are the judicial review provisions of the IAPA specifically exempted from application to decisions by the State Appeal Board. Therefore, we follow the dictates of the legislature and hold that decisions of the State Appeal Board are subject to judicial review pursuant to section 17A.19.[4]

In view of the language of section 17A.23, exemption from chapter 17A judicial review of decisions of the Board can only come from the legislature.

■ We emphasize that the scope of judicial review under chapter 17A will depend on the extent of a party's standing. Polk County may seek review only in the second category of cases—challenge to the Board's authority under chapter 24—while intervenor Elliot may seek review as to the Board's authority, under the constitution and applicable statutes, and its discretion. The courts, however, are reluctant to interfere with the tax and budgetary process and will not substitute their own judgment for the judgment of the State Appeal Board exercised pursuant to statutory authority. *See Appanoose County Rural Taxpayers Assoc., Inc. v. Iowa State Tax Commission,* 158 N.W.2d 176, 182 (Iowa 1968).

■ We address respondents' concerns about the need for expeditious handling of

budget reviews by directing that judicial review of State Appeal Board decisions be heard by the courts at the earliest opportunity. Continuances should not be granted except in the most compelling circumstances.

■ VII. *Type of proceeding.* Petitioners contend that the hearing required by chapter 24 is a contested case, Iowa Code § 17A.2(2), while the respondents claim that it is legislative in nature. The importance of the distinction lies in the procedural due process which attaches to contested cases. *See* Iowa Code §§ 17A.10–.17, .19. The district court ruled that the hearing was a legislative-type hearing. Although we agree with that characterization in its generic sense, within the framework of the IAPA we hold that the sections 24.28–.31 hearing is more appropriately termed "agency action." Iowa Code § 17A.2(9).

The IAPA divides administrative action into three categories: "rulemaking," Iowa Code § 17A.2(8); adjudication (referred to as a "contested case"), Iowa Code § 17A.2(2); and other "agency action," Iowa Code § 17A.2(9). The latter is ungoverned by the IAPA with the exception that it is subject to judicial review provisions. Iowa Code § 17A.19. *E.g., Security Savings Bank v. Huston,* 293 N.W.2d 249, 251 (Iowa 1980) (review of denial by banking superintendent of application to open bank office). The category "agency action" has received little critical attention in comparison to rulemaking and adjudication. *E.g.,* Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, the Rulemaking Process,* 60 Iowa L.Rev. 731 (1975); Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act,* 63 Iowa L.Rev. 285 (1977). "Agency action" is, for all practical purposes, the gap-filler—if administrative action does not fall within the defini-

---

4. "The terms 'express' and 'specifically' [in section 17A.23] will ... force ... legislators who want to avoid the requirements of the IAPA in any situation to face the issue squarely and overtly, since any exemption will have to be as

precise and clear as possible to be effective." Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process,* 60 Iowa L.Rev. 731, 758 (1975).

tions of "rulemaking" or "contested case," then it must be "agency action." Such is the case with a hearing under sections 24.-28–.31.

The parties make no contentions that the hearing falls in the rulemaking category. Therefore, we need only consider whether a hearing conducted by the Appeal Board is encompassed in the contested case category.

The action of any agency falls within the general adjudication category when it determines the rights, duties and obligations of specific individuals as created by past transactions or occurrences. *Board of Supervisors of Linn County,* 263 N.W.2d at 239. Furthermore, it is a contested case if the constitution or a statute requires an *evidentiary* hearing. Iowa Code § 17A.2(2). If the hearing required is not an evidentiary hearing, the adjudication is merely an informal adjudication and falls under the rubric of "agency action." *See* Bonfield, *Formal Agency Adjudication,* 63 Iowa L.Rev. at 288.

Our initial inquiry, therefore, must be whether the hearing provided by section 24.28 is required by the constitution or a statute to be an evidentiary hearing. *See Estabrook v. Iowa Civil Rights Commission,* 283 N.W.2d 306, 308 (Iowa 1979). The intent of the drafters of the IAPA was that a requirement for an "argument-type hearing" was not sufficient to make a hearing a contested case. Bonfield, *Formal Agency Adjudication,* 63 Iowa L.Rev. at 294. The evidentiary hearing required by section 17A.2(2) is "an oral proceeding whose purpose is to determine disputed facts of particular applicability known as adjudicative facts—the who, what, when, where, and why of particular individuals in specified circumstances." *Id.*

The hearings conducted by the State Appeal Board cannot meet the criteria of an evidentiary hearing. A hearing on a budget protest must allow presentation of legislative-type data—information relating to generalized propositions of fact. *See Board of Supervisors of Linn County,* 263 N.W.2d at 240 (equalization order is based on county by county comparisons, legislative facts, not evidence of merits of individual taxpayers' assessment, adjudicative facts). The very nature of the budgetary process historically has made it a function of the legislature. Consequently, the hearing conducted by the State Appeal Board logically cannot be limited to the adjudicative facts of an evidentiary hearing.

The legislature certainly did not intend to limit the chapter 24 hearing to an evidentiary hearing. Not only does section 24.31 specify that the hearing be conducted in a "simple and informal" manner, but the Board consists of the Comptroller, State Auditor and State Treasurer, Iowa Code § 24.26—state officials who could be expected to draw on their independent financial knowledge and expertise in making their decisions in a legislative-type hearing.[5]

The result of our conclusion that this is not a contested case is that the procedural requirements of sections 17A.10–.17 and .19 do not apply. The Board is subject only to those procedural rules which it may voluntarily adopt, the procedural requirements of chapter 24, and general constitutional and statutory requirements that agencies act "reasonably." *See Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 445–46, 36 S.Ct. 141, 142, 60 L.Ed. 372, 375 (1915).

VIII. *Adequacy of protest petition.* The budget review process of chapter 24 is triggered by taxpayers filing with the county auditor "a written protest setting forth their objections to such budget, expenditure or tax levy, or to one or more items thereof, and the ground of such objection." Iowa Code § 24.27. Polk County and Elliot object to the protest petition filed on the grounds that it was too general to confer jurisdiction on the Board or to

---

5. We note without deciding that the Board's reliance on facts and expertise outside the record supports Professor Bonfield's contention that section 17A.2(2) should be construed to apply only to those cases which must be determined on the record. Bonfield, *Formal Agency Adjudication,* 63 Iowa L.Rev. 354–60, 64.

provide adequate notice.[6] We agree with the ruling of the district court that the protest petition was adequate.

While the protest petition may not meet the requirements of a petition in a contested case, *see Hoenig v. Mason & Hanger, Inc.,* 162 N.W.2d 188, 192 (Iowa 1968), it does meet the requirements of chapter 24 which calls for a simple proceeding. It is clear from legislative history that rigid procedures which preclude administrative flexibility are not a part of chapter 24. The statute has been amended to eliminate the previous requirement of a "detailed statement" and "an analysis" of the objections filed.[7] 1976 Iowa Acts, ch. 1067, § 15, codified at Iowa Code § 24.27 (1977).

We conclude that a general protest petition, such as the one filed here, is sufficient to trigger review by the State Appeal Board. The jurisdiction of the Board is adequately constrained by section 24.30 and the general nature of the petition put Polk County on notice that it would have to defend against a general, broad-side attack on the size of the budget. Additionally, section 24.28 places the burden of proof on the county only as to expenditures which are new or greater than those of the previous year. Polk County knew where the budget was being attacked and for which items it shouldered the burden of proof. The protest petition was sufficient.

IX. *Revenue sharing funds.* Polk County and Elliot contend that the State Appeal Board lacked jurisdiction to direct the use

or expenditure of federal revenue sharing funds because chapter 24 does not authorize the Board to "transfer" funds, and federal regulations preclude the states from reviewing local use of revenue sharing funds.

This issue is raised in the brief by Polk County and Elliot for the first time on this appeal. Revenue sharing projections were mentioned by the district court only to illustrate its point that all matters covered in the Board's order had been raised by the protest petition. Motions by Polk County and Elliot did not raise and the court did not rule on the point now urged on appeal. This appeal is in the same posture as any other civil case, Iowa Code § 17A.20; we will not consider a contention which was not raised properly by the parties before the district court. See *Katko v. Briney,* 183 N.W.2d 657, 662 (Iowa 1971) and cases cited therein.

This issue, therefore, cannot be considered on this appeal.

X. *Bailiff's salaries.* The final issue before us is whether the Board misconstrued the statutes and exceeded its authority in ordering that bailiffs be paid out of the general fund instead of the court expense fund.

This issue has been settled by the legislature. The Code now specifically provides that "bailiffs may be paid from the court expense fund." 1982 Iowa Acts, ch. 1146, § 1, to be codified at Iowa Code § 331.-904(6) (1983). Further consideration of this

---

6. The protest petition filed with the Polk County auditor read as follows:

> To the State Appeal Board:
> In accordance with Chapter 24, Code of Iowa 1981, the undersigned, qualified residents and taxpayers of Polk County, Iowa, hereby protest the budget for 1981/82 adopted by the Polk County Board of Supervisors on March 16. We ask the State Appeal Board to reduce the proposed 6.7% property tax increase by considering objections to certain proposed expenditures, estimates of non-tax revenues, and estimates of balances.
> The grounds for such objections include, but are not limited to, new, transferred and expanded programs including personnel positions not adequately justified to the protestors; technical objections to estimates of

cash balances and non-property tax revenues and proposed uses of revenue sharing funds.

7. Iowa Code § 24.27 (1975) provided in pertinent part:

> ... at least three of such persons shall have filed a joint written objection, at or before the time of the meeting contemplated in section 24.11 which *shall include a detailed statement* of the objections to said budget, expenditures or tax levy for each and every fund, or the items therein to which objection is taken *and an analysis* of the fund or funds, or items therein showing grounds for such objections or shall have appeared and made objection, either general or specific, as provided by section 24.11.
> (Emphasis added).

moot issue would be of no assistance in future budget appeals.

We have discussed all of the contentions properly raised by petitioners that may arise in future appeals of county budgets. Although we disagree with certain conclusions of the district court as stated above, the result of the court in upholding the decision of the Board is affirmed.

Costs in this court are taxed two-thirds to Polk County and one-third to the Appeal Board.

REVERSED IN PART AND AFFIRMED IN PART.