**LEWIS CENTRAL EDUCATION ASSOCIATION, Appellant,**

v.

**IOWA BOARD OF EDUCATIONAL EXAMINERS, Appellee,**

**Sharon Collins, Intervenor–Appellee.**

**No. 98–2272.**

Supreme Court of Iowa.

April 25, 2001.

motivated by reasons other than a desire to

improve the legal system are not justified.").

William R. Unger, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Heather Adams, Assistant Attorney General, for appellee Iowa Board of Educational Examiners.

Brett S. Nitzschke and Brian L. Gruhn of Gruhn Law Firm, Cedar Rapids, for intervenor-appellee Sharon Collins.

LARSON, Justice.

This is an action by the Lewis Central Education Association (association) against the Iowa Board of Educational Examiners (board) concerning a complaint filed by the association against a principal in the Lewis Central School District. The board found no probable cause to support the complaint, and the association sought judicial review. The district court ruled that the board's no-probable-cause finding was not subject to judicial review and dismissed the petition. We reverse and remand.

## I. Facts and Prior Proceedings.

On May 4, 1998, the association, which is the recognized professional teachers organization representing nonsupervisory, licensed employees of the Lewis Central Community School District, filed a written complaint with the board against Sharon Collins, a principal in the Lewis Central district. The board, which is charged with the licensing and disciplining of teachers and administrators under Iowa Code chapter 272 (1997), appointed an investigator to report to the board. Following the investigation, the board issued an order, dated August 20, 1998, stating:

> The Complaint was filed with the Board of Educational Examiners on May 4, 1998. Subsequently, an investigation was completed. Having reviewed this matter in its entirety, including the complaint and the investigative report, it

appears to the Board there is insufficient evidence supporting the charges to constitute the probable cause necessary to set the matter for hearing.

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Complaint in this matter is hereby rejected pursuant to 282 IAC 11.6(1)(a).

On September 17, 1998, the association filed a petition for judicial review in Polk County District Court, claiming the no-probable-cause finding was the result of legal error and an abuse of discretion. Specifically, the association complained that the board's decision denied the association an opportunity to "rebut, meet with the Board, respond to, or confront the Respondent's defense prior to making its no probable cause determination" and did not even inform the association how the board defined or applied the probable-cause standard. The board filed a motion to dismiss the petition, and the court did so, ruling that the board's decision not to initiate a contested-case proceeding for lack of probable cause was a decision that is not subject to judicial review. That presents the sole issue on the association's appeal to this court.

## II. *Principles of Review.*

█ Our review of a ruling on a motion to dismiss is for correction of errors at law. *Haupt v. Miller*, 514 N.W.2d 905, 907 (Iowa 1994). The association contends the court's dismissal of its judicial review petition was an error of law because the board's no-probable-cause finding was reviewable under the judicial review provisions of Iowa Code chapter 17A.

## III. *Discussion.*

The district court rested its ruling largely on the case of *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), which held an agency's decision not to prosecute a complaint was not reviewable by the courts, based on federal precedent and the federal administrative procedure act, 5 U.S.C. § 701. *Chaney* is an interesting case involving a challenge by death-row inmates to the Food and Drug Administration's (FDA's) refusal to take action on the inmates' complaint that prescription drugs were not "safe and effective" when used for lethal injections in human executions. The plaintiffs demanded the FDA (1) investigate to determine whether the drugs were safe and effective for lethal injections, (2) require the manufacturers to label the drugs to warn against their use for lethal injections, and (3) take enforcement actions to eliminate such unapproved use of the drugs. *Chaney*, 470 U.S. at 823–24, 105 S.Ct. at 1652, 84 L.Ed.2d at 719.

The FDA refused to take any of these requested actions, citing federal case law and public policy considerations. The plaintiffs sought judicial review, and a federal district court affirmed. The federal court of appeals reversed, holding the FDA's inaction was reviewable as arbitrary and capricious. *Chaney v. Heckler*, 718 F.2d 1174, 1188 (D.C.Cir.1983).

The Supreme Court reversed the court of appeals decision, holding the FDA's refusal to act was not judicially reviewable. In doing so, the Court analyzed the federal administrative procedure act under which review of federal agency action is available unless a statute precludes judicial review or the agency's action is committed to its discretion by law. 5 U.S.C. § 701(a). The Court construed § 701(a)(2) as creating an exception to judicial reviewability for decisions committed to absolute agency discretion. The Court held this absolute, unreviewable discretion under § 701(a)(2) exists when Congress has drawn a statute so broadly "a court would have no meaningful standard against

which to judge the agency's exercise of discretion." *Chaney,* 470 U.S. at 830, 105 S.Ct. at 1655, 84 L.Ed.2d at 723. Because agency decisions not to prosecute or enforce presumptively do not have meaningful standards against which to review them, such decisions are not judicially reviewable under the federal administrative procedure act unless Congress has set forth a clear standard for the agency that would allow a court to review the agency's refusal to act. *Id.* at 832–34, 105 S.Ct. at 1656–57, 84 L.Ed.2d at 724–26. The Court said that

> [t]his Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement.

*Id.* at 831, 105 S.Ct. at 1655, 84 L.Ed.2d at 723 (citations omitted).

A. *The impact of* Chaney. The Court in *Chaney* gave these reasons for denying review of agency decisions not to enforce: (1) These decisions involve "a complicated balancing" of factors such as allocation of agency resources and a realization that "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing," (2) courts generally defer to an agency's construction of the statute it enforces, and (3) an agency's refusal to enforce is akin to a prosecutor's discretion not to indict. *Id.* at 831–32, 105 S.Ct. at 1655–56, 84 L.Ed.2d at 723–24.

The Court, however, concluded that an agency decision not to enforce is only presumptively unreviewable; "the presumption may be rebutted where the substantive statute has provided guidelines for the

agency to follow in exercising its enforcement powers." *Id.* at 832–33, 105 S Ct. at 1656, 84 L.Ed.2d at 724. The Court cited *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), a case that we discuss later, as a case involving adequate statutory guidelines to give courts a sufficient basis to review agency inaction. *Chaney,* 470 U.S. at 833, 105 S.Ct. at 1656–57, 84 L.Ed.2d at 725. Another federal case, *Center for Auto Safety v. Dole,* 828 F.2d 799 (D.C.Cir.1997), illustrates the type of "judicially manageable" standards that would allow judicial review of agency inaction. The court said

> [the agency] is bound by its own regulation requiring that it grant a citizen petition if there is a "reasonable possibility" that a safety-related defect exists. This "reasonable possibility" standard provides the court with a judicially manageable standard for reviewing [agency] petition decisions, thereby rebutting the presumption against judicial review of nonenforcement decisions, established in *Chaney.*

*Dole,* 828 F.2d at 815.

In the present case, despite the reliance on *Chaney* by the board and the district court, we believe it is inapposite for four reasons. First, our administrative procedure act is significantly different from the federal act. Second, aside from the statutory differences, the board's rules require a statement of reasons for rejecting enforcement that may be examined by a court and used as guidance on judicial review. *See* Iowa Admin. Code r. 282—11.6(1). Third, the statute creating the board provides, without limitation, that "[b]oard action is final agency action for purposes of chapter 17A." Iowa Code § 272.2(8). Fourth, Iowa Code section 272.2(15) and the rules of the board, see Iowa Administrative Code rule 282—11.6(1), anticipate the agency action would

be based on probable cause, a "judicially manageable" standard that is a familiar concept to courts.

B. *The federal and state statutes compared.* Under the federal administrative procedure act, judicial review of agency action is available "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

■ As the Court said in *Chaney*, unreviewable discretion under § 701(a)(2) exists when Congress has drawn a statute so broadly that courts have no meaningful standard against which to judge the agency's exercise of discretion. *Chaney*, 470 U.S. at 830, 105 S.Ct. at 1655, 84 L.Ed.2d at 723. In Iowa's administrative procedure act, however, there is no equivalent to federal § 701(a)(2). The Iowa act provides the act "shall be construed to apply to all covered agency proceedings and all agency action not expressly exempted by this chapter or by another statute specifically referring to this chapter by name." Iowa Code § 17A.23 (1997). Thus, our act, like the federal act, recognizes the legislature may, by statute, make agency action unreviewable. However, our act requires that such a statute expressly exempt an agency decision from review and requires a reference in the statute to the Iowa Administrative Procedure Act. *See* Iowa Code § 17A.23. Under the Iowa act, there is clearly no room for a presumption of unreviewability; any exception under our act must be express and specifically name the act. We have said:

Respondents' common-sense arguments and prior statutory interpretations cannot overcome the mandatory language of section 17A.23.... [Unless] the judicial

review provisions of the IAPA [are] specifically exempted from application to decisions ... we follow the dictates of the legislature and hold the decisions ... are subject to judicial review pursuant to section 17A.19.

*Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 276 (Iowa 1983).

■ The definition of agency action under the Iowa act supports the view that no-probable-cause decisions are reviewable:

"Agency action" includes the whole or a part of an agency rule or other statement of law or policy, *order*, decision, license, proceeding, investigation, sanction, relief, or the equivalent or a denial thereof, or *a failure to act*, or *any other exercise of agency discretion or failure to do so*, or the performance of any agency duty or the failure to do so.

Iowa Code § 17A.2(2) (emphasis added). Indeed, this definition makes clear that the board's exercise of discretion in rejecting the complaint and also in failing to order a contested hearing in its order of August 20, 1998, is agency action. Under Iowa Code section 17A.23, all agency action is subject to the Iowa Administrative Procedure Act, and thus to the judicial-review provisions of section 17A.19. Our act's broad definition of agency action in section 17A.2(2) is very similar to section 1–102(2) of the Model State Administrative Procedure Act.[1] The commentary to section 1–102(2) states:

The term "agency action" defined in paragraph (2) expressly includes a "rule" and an "order" ... and an agency's failure to issue a "rule" or an "order." It goes much further, howev-

---

1. "Iowa's APA [was] drafted by Professor Arthur Bonfield, the reporter for the 1981 Model State Administrative Procedure Act." Jim Rossi, *The 1996 Revised Florida Administra-* *tive Procedure Act: A Rulemaking Revolution or Counter-revolution?*, 49 Admin. L.Rev. 345, 355 (1997).

er.... "[A]gency action" includes everything and anything else that an agency does or does not do, whether its action or inaction is *discretionary* or otherwise. There are no exclusions from that all encompassing definition.... *The principal effect of the very broad definition of "agency action" is that everything an agency does or does not do is subject to judicial review. Success on the merits in such cases, however, is another thing....* Iowa Act, Section 17A.2([2]) contains a definition of "agency action" that is similar in scope to paragraph (2).

Model State Admin. Procedure Act § 1–102(2) cmt. (1981) (emphasis added). We hold the board's refusal to act is judicially reviewable.

### IV. *Judicial Relief to be Granted.*

In the present case, the association's petition for judicial review asked the district court to

review the record of the agency, take whatever additional evidence it deems appropriate, and thereafter hold that there was probable cause to hold a hearing and issue an Order commanding that the [board] correct its probable cause determination and hold a hearing on the complaint [and grant further appropriate relief].

On appeal, however, the association's request is more restricted; it requests that the board be ordered

as a part of its probable cause determination process, [to] provide a statement of reasons that defines probable cause, that lists the facts that the Agency relied upon when making its determination, and otherwise provide an explanation of its decision so that the parties coming before the Agency under its complaint procedure understand the legal and factual basis for the Agency's probable cause decision. The Agency's

decision should contain sufficient information so that parties and, if necessary, the courts can evaluate the decision of the Agency in light of the grounds for appeal contained in [Iowa Code section 17A.19]....

We believe the board should have furnished a statement of reasons for its refusal to act that was more specific than its mere declaration that no probable cause was established. Specificity in the no-probable-cause decision is anticipated by the board's rules, which provide: "If a determination is made by the board to reject the case, the complaint shall be returned to the complainant along with a *statement specifying the reasons for rejection.*" Iowa Admin. Code r. 282—11.6(1) (emphasis added). We believe this requires more information than the board furnished here.

A statement of reasons for the board's declination to act not only satisfies the rule's requirement that the board provide reasons for its refusal to act, but it should also provide the necessary guidelines for a reviewing court as suggested by *Bachowski.* See *Bachowski,* 421 U.S. at 571, 95 S.Ct. at 1860, 44 L.Ed.2d at 388–89. *Bachowski,* like the present case, involved a judicial challenge to an agency's refusal to act on a complaint involving a union election. In *Bachowski* the agency's determination not to sue was based on the agency's investigation mandated by 29 U.S.C. § 482(a)(2):

The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States....

*Bachowski,* 421 U.S. at 563–64, 95 S.Ct. at 1856, 44 L.Ed.2d at 385. In *Bachowski,*

the agency advised the complainant of its refusal to act in a letter to the complainant, which stated in a conclusory manner (similar to the statement in the present case) that,

> based on the investigative findings, it has been determined that civil action to set aside the [union] election [as requested by the complainant] is not warranted.

*Id.* at 563, 95 S.Ct. at 1856, 44 L.Ed.2d at 384 (alterations in original omitted). The agency gave no rationale for its decision (until later ordered to do so by the court of appeals [2]).

The complainant in *Bachowski* reacted to the agency's refusal to act by filing an action to challenge the secretary's decision as arbitrary and capricious, asking the court to force a new election. The district court ruled it had no "authority" to do so. The Supreme Court ultimately held that the agency's order refusing to take action was reviewable under the federal administrative procedure act. It approved the holding of the court of appeals that

> the scope of judicial review—... to insure that the Secretary's actions are not arbitrary, capricious, or an abuse of discretion—entitled [complainant], who sought to challenge the factual basis for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election, to a *sufficiently specific statement of the factors upon which the Secretary relied in reaching his decision so that [complainant] may have information concerning the allegations contained in his complaint.*

*Bachowski,* 421 U.S. at 564–65, 95 S.Ct. at 1857, 44 L.Ed.2d at 385 (emphasis added)

(citations omitted). The Court held, however, that judicial review does not "authorize a trial-type inquiry into the factual bases of the Secretary's conclusion that no violations occurred affecting the outcome of the election." *Id.* at 566, 95 S.Ct. at 1857, 44 L.Ed.2d at 385. The Court then noted that,

> to enable the reviewing court intelligently to review the Secretary's determination, the Secretary must provide the Court and the complaining witness with copies of a statement of reasons supporting his determination. "[W]hen action is taken by [the Secretary] it must be such as to enable a reviewing Court to determine with some measure of confidence whether or not the discretion, which still remains in the Secretary, has been exercised in a manner that is neither arbitrary nor capricious.... [I]t is necessary for [him] to delineate and make explicit the basis upon which discretionary action is taken, particularly in a case such as this where the decision taken consists of a failure to act...."

*Bachowski,* 421 U.S. at 571, 95 S.Ct. at 1860, 44 L.Ed.2d at 389 (alterations in original) (first omission in original) (quoting *DeVito v. Shultz,* 300 F.Supp. 381, 383 (D.C.1969)).

■ Under chapter 272, the board should be free to exercise its discretion and expertise without interference from the courts. These powers must, however, be exercised in a manner that is not arbitrary or capricious, and a court must be satisfied that is the case. The court can only make that determination if the board's statement of reasons provides the necessary information as to how the agency power was exercised. That is the func-

**2.** The agency gave an expanded statement of reasons for its decision to take no action, on order of the court of appeals, and that statement with specific details is attached to the

*Bachowski* opinion as an appendix. *See Bachowski,* 421 U.S. at 578–88, 95 S.Ct. at 1863–68, 44 L.Ed.2d at 392–98.

tion of the statement of reasons to be provided by the agency. *See Bachowski,* 421 U.S. at 571, 95 S.Ct. at 1860, 44 L.Ed.2d at 389.

We hold the board's conclusory statement, that the evidence is insufficient to constitute probable cause, is inadequate to allow a court to discern the board's interpretation of probable cause or whether, in applying that test, the board acted arbitrarily or capriciously. We therefore reverse and remand to the district court for an order directing the board to furnish a statement of reasons sufficient to explain the board's interpretation of the probable-cause requirement and its application to the facts as determined by its investigation. If the court then determines the board did not act arbitrarily or capriciously, that will be the end of the matter— subject, of course, to the right of appeal. If, based on this statement of reasons the court finds the board acted arbitrarily or capriciously, it shall reverse and remand to the agency for further proceedings.

**REVERSED AND REMANDED.**